MARTIN & BECHTOLD *v.* UNITED STATES (No. 3332) [1]

---

[1] T. D. 44615.

United States Court of Customs and Patent Appeals, January 28, 1931

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants. *Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

[Oral argument December 11, 1930, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of lithographic transfer paper used for transferring a drawing or design from a lithographic stone to metal blanks, was assessed for duty by the collector as paper with coated surface or surfaces, not specially provided for, at 5 cents per pound and 15 per centum ad valorem under paragraph 1305 of the Tariff Act of 1922.

The importer protested, claiming that the merchandise was properly dutiable under the provision in paragraph 1305 for "gummed papers," not specially provided for, at only 5 cents per pound.

The involved provisions read as follows:

PAR. 1305. Papers with coated surface or surfaces, not specially provided for, 5 cents per pound and 15 per centum ad valorem; * * * gummed papers, not specially provided for, including simplex decalcomania paper not printed, 5 cents per pound; * * *

On the trial in the court below, the testimony of Lewis Bechtold, of the firm of Martin & Bechtold, appellants, was submitted by counsel for the importers. The witness identified Exhibit 1 as representative of the merchandise in issue. Illustrative Exhibit A was identified as representative of duplex decalcomania paper. The witness stated that the difference between duplex and simplex decalcomania paper is that the duplex has two sheets glued together, whereas the simplex consists of one sheet only. He also stated that the coating on Exhibit 1 consisted of gum tragacanth, gum arabic, flour, corn starch, glycerine, and molasses; that, due to the gum, the coating has adhesive qualities; that the involved merchandise is known as, and is, in fact, "lithographic transfer paper"; and that the coated surface of illustrative Exhibit A contained glue, gum arabic, or gum tragacanth.

No other testimony was offered by the importers.

The Government submitted the testimony of several witnesses. It appears therefrom that the imported merchandise is known as lithographic transfer paper; that it is not gummed paper and is not known as such; that it is not used for the same purposes for which decalcomania paper is used; that the involved merchandise is used for tranferring drawings or designs from a lithographic stone to metal printing plates; and that decalcomania paper is used for transferring lithographic designs to the objects to be decorated, such as furniture or metal cabinets. The witnesses also stated that the involved merchandise and so-called gummed papers were not used for the same purposes; that gummed papers were used for shipping tags, labels, revenue stamps, postage stamps, and were also made in narrow-width rolls for sealing the edges of corrugated boxes, etc.; and that one surface of gummed papers is covered with gum or glue so that they will adhere permanently to the objects to which they are attached.

The witness, MacLaurin, testifying for the Government, said that lithographic transfer paper had to be wet in order to work efficiently, while it was necessary for decalcomania paper to be absolutely dry. He also said that the imported merchandise was a wet transfer paper and was known as such.

The witness, Frederick W. Farrell, a chemist, testified that the imported merchandise was covered with a "gelatin or starchy material and then saturated with glycerine to keep it damp and moist," and that it was not a gummed paper.

The witness, Joseph Sample, a Government chemist, testified that he had analyzed the coatings on Exhibit 1 and illustrative Exhibit A; that the coating on the imported merchandise—Exhibit 1—was composed of glycerine and dextrinized starch; that the coating on illustrative Exhibit A, the decalcomania paper, was composed of dextrinized starch, but that it contained no glycerine or other substances; and that dextrine, a carbohydrate solid obtained from starch, is not a gum.

The court below held that the record was fairly conclusive that the involved merchandise was neither gummed nor decalcomania paper, and overruled the protest.

It is claimed by counsel for appellants that the involved lithographic transfer paper is gummed paper; and that, although the witness, Sample, testified that dextrine is not a gum, it is declared to be a gum in both the Standard and Century dictionaries.

Our attention is also called to the fact that, in the Summary of Tariff Information, 1921, page 242, the Tariff Commission stated that dextrine was a gum and was known commercially as British gum; and that, in paragraph 36 of the Tariff Act of 1913, dextrine is enumerated as a gum.

It is also contended by counsel for appellants that the imported merchandise and decalcomania paper are gummed in the same way, by coating with gum tragacanth and gum arabic; that, in the Summary of Tariff Information, 1921, page 1059, the Tariff Commission described decalcomania paper as a "kind of gummed paper"; and that the Congress clearly intended that the provision for gummed papers should be construed as including all classes of papers coated with gum.

It is argued that the Government failed to prove commercial designation; that, although this court, in the case of *American Express Co.* v. *United States*, 2 Ct. Cust. Appls. 459, T. D. 32207, held that "lithographic transfer paper" was dutiable as coated paper under paragraph 411 of the Tariff Act of 1909, that act did not contain a provision for gummed paper; and that, therefore, the decision in the *American Express Co.* case is not controlling of the issue at bar.

It is conceded by counsel for appellants that the involved merchandise is not decalcomania paper, and that it is coated paper. It is claimed, however, that it is more specifically provided for as gummed paper, a specific class of coated paper.

Although there is some discussion in the opinion of the court below regarding proof of commercial designation, and in the briefs of counsel for appellants with regard to whether or not commercial designation has been established, we may say at the outset that, in our opinion, the Government has wholly failed to prove commercial designation within the rules many times announced by this court.

In the Summary of Tariff Information, 1921, the Tariff Commission referred to gummed paper as a "kind of coated paper one surface of which is covered with gum or glue. It is used in making stickers, labels, stamps, seals, etc." It was also stated that decalcomania paper is a "kind of gummed paper. It is used for transferring colored designs to glassware, porcelain, marble, and the like. It is covered with a vegetable gum or alumina coating"; and that "Wet transfer paper (C–15) is a kind of coated paper used in lithography for transferring designs to lithographic plates. * * * The same sort of paper coated but not yet imprinted with the design is included under the provisions for surface-coated paper in the first part of paragraph 1305."

In the Summary of Tariff Information, 1920, prepared for the Ways and Means Committee, the Tariff Commission reported that "lithographic transfer paper is a coated paper used in transferring impressions on stone" and that "gummed paper is a paper coated with fish glue on one side. It is used for labels and stickers, and is used for sealing packages, bundles, etc."

It would seem to be obvious that the Congress had considered decalcomania paper as a kind of gummed paper, and that it under-

stood that gummed paper, lithographic transfer paper, and decalcomania paper possessed different properties and were used for entirely different purposes. The various reports of the Tariff Commission referred to are not inconsistent with the views of the witnesses for the Government, with the exception, possibly, of the witness, Sample, who stated that dextrine is not a gum.

From our study of the record and the briefs, together with the legislative history of paragraph 1305, we are satisfied that the Congress did not intend to include in the provision for gummed papers lithographic transfer paper, and that the Congress recognized that, unless it specifically provided, as it did, that decalcomania paper not printed should bear the same rate of duty as gummed papers, it would not be included under that provision; and that, by the language "including simplex decalcomania paper not printed," the Congress intended to extend the provisions for gummed papers, not specially provided for, to include simplex decalcomania paper at the same rate of duty. We are of opinion, therefore, that the clause "including simplex decalcomania paper not printed" was intended to be considered as words of extension and not of definition. Furthermore, it may be said that, in view of the decision of this court in *American Express Co.* v. *United States, supra*, holding certain so-called lithographic transfer papers to be dutiable as surface-coated papers under paragraph 411 of the Tariff Act of 1909, the Congress must have known that, unless more specifically provided for elsewhere, lithographic transfer papers of the kind here involved, would be held to be dutiable under the provision for papers with coated surfaces and, accordingly, would have specifically included such papers in the provision for gummed papers, as it did simplex decalcomania paper, had it intended they should be included therein.

We concur in the conclusion reached by the court below, and, for the reasons stated, its judgment is *affirmed*.